Darby, J.
The plaintiff by its amended petition, alleges that the city of Cincinnati entered into a contract with The United Construction Company, for the extending of Vista avenue in Cincinnati; that the plaintiff furnished to the contractor, material used in said construction; that the defendant executed a bond under Section 2365-1 to 2365-4, General Code, for the faithful carrying out of said contract *306 by the contractor. Plaintiff further avers that on or about October 22, 1929, having furnished all the material as aforesaid, it gave notice of its claim, amounting to $6,970.38 to the defendant, and later, December 19, 1929, furnished said defendant an itemized statement of its claim. Plaintiff further avers that on February 17, 1930, the city accepted the work provided .for in the contract.
The answer consists of an admission of the giving of the bond''by the defendant, and denial of all other allegations.
The second defense is that the improvement referred to was accepted by the city manager of Cincinnati in accordance with his duty, on October 29, 1929; that plaintiff did not furnish to the defendant statements as provided for in the Code, “nor did it file its actiton within one year of the date of acceptance of the work.”
The cause was heard by the court, a jury having been waived.
No evidence was offered by the defendant.
Two contentions by the defendant are made:
First: That the action was not filed within the time in which such actions may be filed under Section 2365-3.
Second: That the evidence was insufficient as to the material furnished, to support the plaintiff’s claim.
The evidence in the case shows that on October 25, 1929, the engineer of highways of the city transmitted to the city manager the following letter:
“The improvement of extending Vista avenue to Dana avenue, under contract with The United Construction Company, has been completed in a satisfactory manner, and in accordance with the requirements of the specifications. The pavement is of reinforced concrete; the cost of the improvement as shown by the attached total cost statement, is $59,147.98.
“I recommend the acceptance of this work by you on behalf of the city.”
Endorsed upon that communication, which is Exhibit 8-A, is the following:
“Work accepted, total cost statement approved and for *307 warded to Honorable Council of Cincinnati. C. 0. Sherrill, City Manager..”
Exhibit 8 is a final statement of the cost • of extending Vista avenue and is signed by the assistant construction engineer, the engineer of highways, the senior assistant construction engineer and the city manager. Endorsed on the back of said exhibit is the following:
“Total cost statement for the improvement of Vista avenue extension to Dana avenue, United Constr. Co., contractor, transmit to Council.
C. 0. Sherrill,- City Manager.
' Public Works Section.
“Oct. 29, 1929 In Council.
“Oct. 30, 1929 Referred to Committee of Finance.
“In Council of Cincinnati, Nov. 13, 1929, ordered filed.
“Nov. 13, 1929. Honorable Council, city of Cincinnati.
“Gentlemen:
Reporting on the within total cost, it is recommended that the same be placed in the files, the entire cost and expense having been paid by the city.”
Signed by the Finance Committee.
It is in evidence that there was some question as to penalty against The United Construction Company for delay in completion of the -contract, and on February 17, 1930, a communication was transmitted to council (Exhibit 9-A) referring to this question of penalty as between The United Construction Company and the city, and this matter was referred to the city solicitor and was the subject of further action by way of adjusting that matter of penalty.
The plaintiff avers that the work was not accepted until February 17, 1930. If that statement is correct, this action was filed within the year allowed by statute. If the work was accepted October 29, 1929, as claimed by the defendant, this action was not filed within time.
A determination of this question involved in this case* depends upon the authority of the city manager to accept, the work. '
In Surety Co. v. Schmidt, 117 O. S., 28, the court had *308 under consideration the section involved, to-wit, Section 2365-3, and in which it is held that under such statute:
“ * * * the statement therein referred to, to be effective must be furnished after the acceptance of the improvement by a duly authorized board or officer.”
The clause of such section pertaining to the limitation of actions in such cases is as follows:
“ * * * If said indebtedness shall not be paid in full at the expiration of said sixty days, said person, firm or corporation may bring an action in his own name upon such bond, as provided in Sections 11242 and 11243, General Code, said action to be commenced not later than one year from the date of acceptance of said building, work or improvement.”
The question therefore is, was this work accepted October 29, 1929 “by the duly authorized board or officer”?
The charter of Cincinnati was offered in evidence. Article II, Section 1 provides:
“All legislative powers of the city shall be vested, subject to the terms of this charter and of the Constitution of Ohio, in the council. The laws of the state of Ohio not inconsistent with this charter, except those declared inoperative by ordinance of the council, shall have the force and effect of ordinances of the city of Cincinnati; but in the event of conflict between any such law and any municipal ordinance or resolution, the provision of the ordinance or resolution shall prevail and control.”
Section 4211, General Code, entitled “Powers of council shall be legislative” provides:
“The powers of council shall be legislative only, and it shall perform no administrative duties whatever, and it shall neither appoint nor confirm any officer or employee in the city government except those of its own body, except as is otherwise provided in this title. All contracts requiring the authority of council for their execution shall be entered into and conducted to performance by the board or officers having charge of the matters to which they relate, and after authority to make such contracts has been given and the necessary appropriation made, council shall take no further action thereon.”
*309 So far as this court is advised, there is nothing in the charter which is inconsistent with said Section 4211, General Code. In fact, they are in strict harmony with the exception that the code provides that the powers of council shall be legislative only, and that it shall perform no administrative duties.
The last sentence of code Section 4211 places a direct limitation upon the action of council, and forbids it to take any action on contracts requiring its authority, after authority to make the contracts has been given and the necessary appropriation made.
The charter further provides:
“Art. IV, Sec. 1. (Executive and administrative service.) The council shall appoint a city manager who shall be the 'chief executive and administrative officer of the city.”
“Art. IV, Sec. 3. It shall be the duty of the city manager to supervise the administration of the affairs of the city except as otherwise specifically provided in this chapter; * * * The city manager shall have the powers conferred by law upon boards of control. Except as otherwise provided In this charter, all other executive and administrative powers conferred by tfie laws of the state upon any municipal official shall be exercised by the city manager or persons designated by him.”
The Code of Ordinances, passed in pursuance of the charter, provides, Art. I, Section 1:
“The following administrative departments shall be responsible to the city manager: * * * Service. Highways * * * .”
Section 2:
“All the administrative work of the city government shall be under the control of the city manager excepting such functions as are, by the city charter and appropriate ordinances in accordance therewith, assigned otherwise.”
The charter of Cincinnati, in the distribution of powers between the council and the city manager, is in harmony with Section 3515-19 et seq, General Code.
*310 What are some of the “executive and administrative powers conferred by-the laws of the state upon any municipal official (which) shall be exercised by the city manager or persons designated by him”? (Charter, Art. IV, Sec, 3)
Section 4325, General Code, provides the duties of the director of public service and requires that he shall supervise the improvement of streets and other public ways, the lighting, sprinkling and cleaning of public places, and “the construction of public improvements and public works except those having reference to the department of public safety, or as otherwise provided in this title.”
Section 4364 pertains to the duties of a street commissioner or engineer, when one is provided by council, requiring that he “shall supervise the cleaning and repair of streets, etc.”
Section 4328 provides for the making of contracts by the director of public service for any work under the supervision of that department, not involving more than five hundred dollars; and
“When an expenditure within the department other than the compensation of persons employed therein exceeds five hundred dollars, such expenditure shall first be authorized and directed by ordinance of council. When so authorized and directed, the director of public service shall make a written contract with the lowest and best bidder after advertisement for not less than two nor more than four consecutive weeks, in a newspaper of general circulation within the city.”
Thus it will be seen that what the charter did was to confer upon the city manager all executive and administrative authority, and what Section 4211 did was to deprive council of the performance of any action relative to contracts after authority to make such contrtact had been given and the necessary appropriation made. The legislative authority is clearly and distinctly separated from executive and administrative authority. There is no law, or ordinance, or provision of the charter conferring upon council any right, or authority, or duty to perform relative *311 to the acceptance of work done by and under the supervision, and under the control of the city manager.
Necessarily the work when completed in accordance with the contract, is accepted, and in any event it should be accepted by some authority in the city. Since council is deprived of the authority to take any further action on contracts after authorizing them and making appropriations for them, there is but one other authority that could accept the work, and that is the city manager as the “chief executive and administrative officer of the city.”
The city manager was the “duly authorized board or officer” to whom statements should be made, and he was the officer who had power to accept the work or improvement involved in a contract such as involved in this case. He accepted the work on the recommendation of the engi-^ neer of highways, on or before October 29, 1929. That date was the date when the year began in which the plaintiff had the right to bring its action. The subsequent dispute as to the penalty, between the city and The United-Construction Company had no effect to suspend the operation of the Statute of Limitations.
The plaintiff failed to commence its action “not later than one year from the date of acceptance of said * * improvement” and it is barred from maintaining this action.
In Texas Cement Co. v. McCord, 233 U. S., 157, a statute of the general import of Section 2365-1 to 2365-4, General Code, was under consideration. In the syllabus the court say:
“Limitations specified in the statute creating a new liability are a part of the right conferred, and compliance therewith is essential to the assertion of the right conferred by the statute.”
On page 162 the court say:
“By this statute a right of action upon the bond is created in favor of certain creditors of the contractor. The cause of action did not exist before, and is the creature of the statute. The act does not place a limitation upon a cause of action theretofore existing, but creates a new *312 one upon the terms named in the statute. The right of action given to creditors is specifically conditioned upon the fact that no suit shall be brought by the United States within the six months named, for it is only in that event that the creditors shall have a right of action and may bring a suit in the manner provided. The statute thus creates a new liability and gives a special remedy for it, and upon well settled principles the limitations upon such liability become a part of the right conferred, and compliance with them is made essential to the assertion and benefit of the liability itself.” (Cases cited.) ••
In Surety Co. v. Schmidt, supra, the court, speaking through Marshall, C. J., says on page 42:
“As stated in Cement Co. v. McCord, supra, the right of those furnishing labor and materials to sue the Surety Company is purely a creature of the statute, providing a special remedy, and all of the conditions of the statute creating the right and providing the remedy are jurisdictional conditions precedent to the bringing of such action.”
It is unnecessary to consider the second contention, that the plaintiff has not proved its claim as to furnishing material for the improvement.
The petition of the plaintiff is therefore dismissed.